Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Carlos Chaves Jiménez<br><br>Apelados<br><br>vs.<br><br>Neville Barret<br><br>Apelante<br><br>vs.<br><br>Autoridad de los Puertos de Puerto Rico | TA2025AP00061 | **APELACIÓN**<br>procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil Núm.: HU2023CV01425<br><br>Sobre: Reconsideración |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de agosto de 2025.

Comparece el Sr. Neville Barrett (Sr. Barret o apelante), quien nos solicita la revocación de la Sentencia emitida el 1 de mayo de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró Ha Lugar la Sentencia Sumaria peticionada por el Sr. Carlos Chaves Jiménez (Sr. Chaves Jiménez o apelado). En consecuencia, ordenó al apelante a remover su avión del hangar objeto del litigio.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, modificamos el dictamen apelado a los fines de reducir a $3,000.00 la cuantía concedida en concepto de honorarios de temeridad, y así modificado, se confirma mediante los fundamentos que expondremos a continuación.

---

[1] Notificada al día siguiente.

# I.

El 1 de octubre de 2023, el señor Chaves Jiménez instó una Demanda de desahucio contra el Sr. Barret. En síntesis, alegó que el 7 de junio de 2023, suscribió un contrato de arrendamiento 2023-000117-AP22-23-(4)-117 con la Autoridad de los Puertos respecto a un hangar en el Aeropuerto Dr. Hermenegildo Ortiz Quiñones en Humacao. En lo pertinente, expuso que dicho acuerdo prohíbe los subarrendamientos de la siguiente manera:

> *A. El Arrendatario tendrá derecho a utilizarlas propiedades arrendadas durante el periodo contratado para los siguientes fines, única y exclusivamente: Hagar para uso privado. Se prohíbe subarrendar el uso del hangar para aviones que no sean propiedad del arrendatario.[2]*

No obstante, aseveró que el apelante dejó abandonado un avión en dicho espacio, por lo que, requirió la inmediata remoción de la nave. A su vez, solicitó la compensación de una suma no menor de $10,000.00 en concepto de costas, gastos y honorarios de abogados.

En reacción, el 6 de diciembre de 2023, el Sr. Barret presentó la Contestación a la Demanda, Reconvención y Demanda Contra Tercero denominado la Autoridad de los Puertos. En esencia, contextualizó que el señor John Williams Bermúdez (Sr. Williams Bermúdez) y el señor Charles Peterson del Toro (Sr. Peterson del Toro) construyeron el aducido hangar en un terreno perteneciente a la Autoridad de los Puertos. Para disfrutar del mismo, indicó que el apelante y él junto a estas personas crearon una sociedad de gastos. Sin embargo, adujo que, tras el fallecimiento del Sr. Williams Bermúdez optó por delegar al Sr. Chaves Jiménez la negociación del contrato de arrendamiento. Razonó que, tal encomienda constituyó un mandato del cual el

---

[2] Apéndice del Escrito de Apelación, en la entrada (1) del Sistema de Administración y Manejo de Casos del Tribunal de Primera Instancia, a la pág. 2.

tercero demandado tenía conocimiento. En vista de ello, argumentó que no removerá su nave, pues el Sr. Chaves Jiménez y la Autoridad de los Puertos no obraron de buena fe. Solicitó, en efecto, la compensación de $250,000.00 en concepto de acciones torticeras, sufrimientos y angustias mentales

En respuesta, el 29 de febrero de 2024, el Sr. Chaves Jiménez sometió su Contestación a la Reconvención y Demanda de Tercero. En esta, puntualizó que, luego del fallecimiento del Sr. Williams Bermúdez, se continuaron los diálogos para renovar el contrato de arrendamiento. Sin embargo, aseguró que el demandado no mostró interés en el hangar. Ante tales circunstancias, indicó que el actual contrato se otorgó exclusivamente para su beneficio. A su vez, negó la existencia de un mandato a favor del apelante. Por consiguiente, solicitó la concesión de desahucio, y en efecto, la desestimación de la reconvención y la demanda contra tercero.

Por su parte, el 6 de marzo de 2024, la Autoridad de los Puertos radicó su Contestación a la Demanda contra Tercero. En suma, reconoció que tras unas negociaciones con el Sr. Chaves Jiménez le concedió a este el contrato de arrendamiento. Por tal motivo, arguyó que el Sr. Barret no tiene derecho a ocupar el hangar en cuestión, pues nunca se otorgó a su favor un arrendamiento. Recalcó que, el subarrendamiento está prohibido, por lo que, procede la desestimación de la acción legal instada en su contra.

Luego de una serie de trámites procesales, cuyo tracto no amerita pormenorización, el 26 de marzo de 2025, el Sr. Chaves Jiménez presentó una Moción de Sentencia Sumaria a la cual adjunto una serie de documentos, entre ellos, el contrato de arrendamiento. Reiteró que, su obligación contractual con la Autoridad de los Puertos no le permite subarrendar el hangar en

cuestión. Ante la inexistencia de hechos en controversia al respecto, peticionó la inmediata remoción del avión por parte del demandado.

Presentada su solicitud, el 2 de abril de 2025, el TPI concedió al demandado el término de 20 para presentar su escrito de oposición.

A tenor con lo decretado, el 16 de abril de 2025, el Sr. Barret sometió su Moción en Oposición a la Sentencia Sumaria a la cual adjuntó una declaración jurada. Argumentó que existen hechos esenciales en controversias en cuanto: (1) al mandato dirigido al demandante, (2) la validez del arrendamiento, y (3) la falta de parte indispensable, toda vez que no se incluyó a la Autoridad de Puertos en el pleito. Señaló que la ausencia de dicha entidad vulnera el debido proceso de ley, y le impide conocer las motivaciones del demandante en torno al contrato de arrendamiento asumido individualmente.

Levantados tales argumentos, el 21 de abril de 2025, el Sr. Chaves Jiménez presentó Réplica a Oposición a Sentencia Sumaria y Dando por Sometido Moción de Sentencia Sumaria. Entre otros extremos, aseveró que la parte demandada sometió su oposición en contravención a los requisitos procesales y fuera del término establecido. Por consiguiente, razonó que deben darse por admitidos los hechos incontrovertidos que identificó en su solicitud. Peticionó, además, la imposición de honorarios de abogados por temeridad.

Examinados los argumentos de las partes, el 1 de mayo de 2025, el foro primario dictó una Sentencia Parcial, notificada al día siguiente, en la declaró Ha Lugar la petición de sentencia sumaria. En lo pertinente, formuló treinta (30) determinaciones de hechos:

> *1. El demandante, Sr. Carlos Cheves Jiménez, en virtud del contrato 2023- 000117, AP22-23-(4)-117 otorgado el 7 de junio de 2023, pactó y suscribió con la Autoridad*

*de los Puertos un acuerdo de arrendamiento, por lo que tomó posesión como arrendatario del Hangar Local 3, para uso privado y exclusivo de sus aviones, espacio que figura ubicado en el Aeropuerto Dr. Hermenegildo Ortiz Quiñones, localizado en el Municipio de Humacao.*

*2. Como parte de las condiciones pactadas en dicho contrato el 2023- 000117, AP22-23-(4)-117, la Autoridad de los Puertos le impuso como condición al señor Chaves, conforme surge del "ARTICULO 4", inciso "A" la siguiente prohibición como inquilino:*

*"A. El Arrendatario tendrá derecho a utilizar las propiedades arrendadas durante el periodo contratado para los siguientes fines, única y exclusivamente: Hangar para uso privado. Se prohíbe subarrendar el uso del hangar para aviones que no sean propiedad del arrendatario."*

*3. El señor Chaves, el señor Barret y un tercero, muchos años antes del contrato señalado en el párrafo anterior, se les había permitido guardar naves aéreas en dicho hangar.*

*4. Tras el fallecimiento del señor John Williams Bermúdez, hecho ocurrido el día 18 de agosto de 2021, se quedaron con las naves estacionadas en el hangar aludido.*

*5. El demandante realizó gestiones con la Autoridad de Puertos de Puerto Rico para ver si podían grupalmente arrendar. Sin embargo, la Autoridad de Puertos de Puerto Rico señaló que sólo se permitía arrendar a una persona y que no se permitía el uso del Hangar para terceros o para comercio.*

*6. El demandado admitió que tras la muerte de señor Williams no realizó pago alguno, ni a la Autoridad de Puertos de Puerto Rico como tampoco al demandante desde el año 2021 hasta el 2024.*

*7. El demandado admitió en su declaración jurada que no realizó ningún pago de alquiler al demandante.*

*8. El señor Cheves gestionó solo para sí y llegó a un acuerdo de arrendamiento con la Autoridad de Puertos de Puerto Rico mediante el contrato con la Autoridad de los Puertos por un periodo de 5 años.*

*9. Como parte de las cláusulas y condiciones impuestas por la Autoridad al demandante en su contrato de arrendamiento, según su "ARTICULO 4", inciso "A" de se estableció la siguiente prohibición:*

*"A. El Arrendatario tendrá derecho a utilizar las propiedades arrendadas durante el periodo contratado para los siguientes fines, única y exclusivamente: hangar para uso privado. Se prohíbe subarrendar el uso del hangar para aviones que no sean propiedad del arrendatario."*

10. *Debido a lo anterior, el demandante no podía continuar con aviones almacenados en el hangar que no fueran de su propiedad así que mediante comunicación vía correo electrónico el demandante le solicitó al señor Barret que removiera los aviones del hangar antes mencionado.*

11. *El señor Barret, quien no es residente en la Isla, solicitó tiempo para hacer arreglos para remover su avión, reconociendo que el derecho sobre el hangar era del demandante.*

12. *Transcurrido tiempo sin acción del señor Barrett, previo a la radicación de esta demanda, el señor Chaves le envío el 2 de agosto de 2023 una segunda carta por abogado, concediéndole término para que retirara el avión.*

13. *El señor Barret respondió a la carta antes mencionada el 15 de agosto de 2023. Este admitió que recibió la carta y señaló, entre otras cosas que, que si bien comunicaba su intención de sacar la nave, manifestó que no tenía tiempo para atender la reclamación en estos momentos por sus compromisos*

14. *Ante la negativa del señor Barrett de retirar su avión del hangar y debido a que su avión no está contractualmente permitido estar allí estacionado; y toda vez que quien único tiene derecho legal al uso del Hangar en virtud de contrato lo es el señor Chaves, se presentó la actual acción judicial de desahucio en por la vía sumaria.*

15. *El señor Barret contestó a la demanda y como defensa afirmativa alegó que: (1) existe conflicto de título (2) que hizo aportaciones a la edificación del hangar y (3) que hacía aportaciones constantes al mantenimiento del hangar. Además, alegó (4) que existía un acuerdo de mandato con el demandante para que el contrato fuera en favor de los cuatro.*

16. *El señor Barret admitió bajo juramento, que a pesar de que el contrato estaba en español y este no leía, escribía ni hablaba español, admitió que la práctica habitual y usual con los hangares construidos en propiedades del aeropuerto suele ceder la propiedad a la entidad al vencimiento de un contrato de arrendamiento, opciones, extensiones etc.*

17. *El señor Barret admitió bajo juramento, que en relación con el local o hangar no realizó aportación económica alguna cuando el mismo se edificó.*

18. *El señor Barret admitió bajo juramento que no ha realizado ningún pago de renta o de cualquier otro concepto al Sr. Carlos Chaves por el uso del hangar.*

19. *El señor Barret admitió bajo juramento que no realizó ningún pago de renta o de cualquier otro concepto a la Autoridad de Puertos de Puerto Rico en relación con el uso del hangar.*

*20. El señor Barret admitió bajo juramento que, entre el Sr. John Williams y este nunca se suscribió acuerdo contractual por escrito.*

*21. El señor Barret admitió bajo juramento, que entre el Sr. Charles Peterson y este nunca se suscribió acuerdo contractual por escrito.*

*22. El señor Barret admitió bajo juramento que, entre el Sr. Carlos Chaves y este nunca se suscribió acuerdo contractual por escrito. 23. El señor Barret admitió bajo juramento que, entre éste, el Sr. John Williams, el Sr. Charles Peterson y Sr. Carlos Chaves, nunca se suscribió ni existió, ni en conjunto, ni de forma separada un contrato por escrito.*

*24. El señor Barret admitió bajo juramento que, no existe algún documento suscrito por el señor Barret que establezca una orden de mandato por escrito dirigida al señor Chaves.*

*25. El señor Barret también admitió que no existe algún documento suscrito por el señor Chaves aceptando y obligándose a realizar algún mandato por escrito en su favor o de cualquier otro tercero.*

*26. En el descubrimiento de prueba se le requirió al señor Bennet evidencia documental de los pasajes de todos los viajes que realizó a la Isla de Puerto Rico durante el año de 2022; 2023 y lo que va de 2024 y no produjo ninguno. Este alegó que había realizado viajes en función de piloto comercial.*

*27. Del expediente judicial surge que el demandado bajo juramento acepto que no existe un contrato por escrito de mandato. No obstante, bajo juramento sostuvo que las partes habían llegado a un acuerdo verbal de mandato.*

*28. El demandado no presentó ninguna prueba sobre el alegado contrato de mandato entre las partes.*

*29. El demandado sostuvo que fue parte de una demanda de desalojo con las mismas partes pero no presentó documento que lo probara ya que alegó que es un documento público.*

*30. Según el expediente judicial, del descubrimiento de prueba el señor Barret no produjo algún documento estableciendo la expedición de un mandato por escrito, ni previo, ni posterior a las negociaciones entre el señor Chaves y la Autoridad de Puertos de Puerto Rico en beneficio de éste.*[3]

Respecto a la oposición, el TPI concluyó que el Sr. Barret incumplió con las formalidades contenidas en la Regla 36.3 de

---

[3] Apéndice del Escrito de Apelación, en la entrada número (120) de SUMAC TPI, págs. 5-8.

Procedimiento Civil, *infra.* En los méritos del caso, dispuso que el demandado no ha pagado alquiler por el espacio que ocupa su nave. Estableció que aún si lo hiciera, ello constituiría una actuación contraria al término contractual otorgado por la Autoridad de los Puertos. En vista de ello, declaró Ha Lugar desahucio, y concedió el término de 30 días para remover la nave.

Oportunamente, el 5 de mayo de 2025, el Sr. Chaves Jiménez presentó Moción Solicitando Reconsideración, Solicitando Desestimar la Reconvención y la Demanda de Tercero y que la Sentencia Sea Final. En esencia, señaló que el foro primario incidió al no desestimar por la vía sumaria la totalidad de las reclamaciones incoadas por el demandado. A su vez, sostuvo que debió ordenarle el pago de honorarios por temeridad, toda vez que este expuso hechos falsos en sus escritos.

Por su parte, el 7 de mayo de 2025, el Sr. Barret interpuso una Moción de Reconsideración y de Enmiendas a Determinaciones de Hecho Respecto a Sentencia Parcial Dictada Sumariamente.[4] Aseveró que, el presente caso surge de una relación colaborativa entre el Sr. Jiménez, el Sr. Peterson y este. Aseguró que tras el fallecimiento del Sr. Williams Bermúdez, el demandante inició gestiones para viabilizar el contrato de arrendamiento con la Autoridad de los Puertos. Por tales hechos, razonó que no procedía dictar sentencia sumaria, pues corresponde evaluar si el actual contrato de arrendamiento contraviene con el acuerdo del mandato. Asimismo, señaló que debió incluirse a la Autoridad de los Puertos como parte indispensable.

En respuesta, el 12 de mayo de 2025, el Sr. Chaves Jiménez sometió una Moción en Oposición a Reconsideración y a la

---

[4] **Con posterioridad, el demandado presentó una Moción Informativa mediante la que indicó que dicho escrito debía atenderse exclusivamente como reconsideración.**

Solicitud de Determinaciones de Hechos Adicionales. En esta, reiteró que, el demandado no cumplió con los criterios para presentar la oposición de sentencia sumaria. Por ende, sostuvo que no puede esbozar hechos que debió plantear de manera oportuna.

Así argumentado, el 14 de mayo de 2025, el Sr. Barret presentó Moción en Oposición a Otra de Reconsideración en Cuanto a Sentencia Sumaria Parcial. En esta, recalcó que el tribunal no debió dictar sentencia sumaria, pues existen controversias sustanciales sobre la obligación de mandato. También, argumentó que el planteamiento en torno a falta de fianza no residente es inaplicable, pues la nave en cuestión constituye una propiedad radicada en Puerto Rico.

Posteriormente, las partes continuaron sometiendo réplicas y dúplicas en las que esbozaron similares los argumentos relacionados con sus escritos de reconsideración.

Evaluadas ambas posturas, el 30 de mayo de 2025, el foro primario emitió la Sentencia, notificada el 5 de junio de 2025, en la que declaró Ha Lugar la reconsideración presentada por el Sr. Chaves Jiménez. En lo atinente a la controversia, dispuso el siguiente pronunciamiento:

> *El señor Barret admitió bajo juramento que no ha realizado ningún pago de renta o de cualquier otro concepto al Sr. Carlos Chaves por el uso del hangar. El señor Barret admitió bajo juramento que no realizó ningún pago de renta o de cualquier otro concepto a la Autoridad de Puertos de Puerto Rico en relación con el uso del hangar. Por lo tanto, según la prueba presentada la Moción de Sentencia Sumaria el demandante realizó un contrato con la Autoridad de Puertos de Puerto Rico en donde se le advierte que es para su uso exclusivo.*
>
> *Además, se le prohíbe subarrendar el uso del hangar para aviones que no sean propiedad del arrendatario. El avión que se pretende desalojar es de propiedad del demandado y no del demandante. El demandado no le está pagando alquiler al demandante por ocupar el espacio del demandante y aun sí lo hiciera estaría*

*actuando en contra del contrato suscrito entre el demandante y la Autoridad de Puertos de Puerto Rico.*[5]

En consecuencia, el TPI procedió a desestimar la reconvención y la demanda contra tercero instada por el Sr. Barret. Además, concedió honorarios por temeridad por la cantidad de $20,000.00.

Inconforme aún, el 28 de julio de 2025, el Sr. Barrett recurrió ante nos mediante un Escrito de Apelación en el que presentó los siguientes señalamientos de error:

*Primer Error: Erró el TPI al dictar sentencia sumariamente en un pleito que contenía controversias genuinas, materiales y medulares sobre la relación jurídica entre las pares, la causa del contrato de arrendamiento y la relación de mandato existente entre las partes sin dirimir la credibilidad de los testimonios ni permitir prueba de parte indispensable.*

*Segundo Error: Erró el TPI al no considerar la figura del mandato, el deber de lealtad, la buena fe contractual y la nulidad del contrato por causa ilícita. La Sentencia apelada incurre en un error jurídico manifiesto al omitir, por completo, la evaluación sustancial de la relación jurídica de mandato alegado y sustentada por el demandado, así como las consecuencias legales de su incumplimiento por parte del demandante.*

*Tercer Error: Erró el TPI al penalizar la alegada omisión técnica del demandado en su oposición a la moción de sentencia sumaria, pese a que el expediente reflejaba controversias materiales no resueltas y a que el propio Tribunal sentenciador había expresado que obvió dicha circunstancia al resolver la sentencia sumaria parcial que dio base a la aquí recurrida.*

*Cuarto Error: Erró el TPI al refrendar un contrato de arrendamiento celebrado entre el demandante y la Autoridad de los Puertos, sin ponderar que dicho contrato estaba viciado en su origen por falta de causa lícita, por transgresión al deber fiduciario del demandante y por contraria norma de buena fe contractual. Más aún, fundamentó su Sentencia en alegada falta de pago del demandado al demandante, hecho irrelevante a la controversia principal, desviándose así del análisis jurídico correcto.*

*Quinto Error: El TPI abusó de su discreción al imponer, sin fundamento ni análisis jurídico adecuado, honorarios por temeridad contra el demandado al penalizarlo con la suma exorbitante de veinte mil dólares ($20,000.00) a pesar de que el expediente*

---

[5] Apéndice del Escrito de Apelación, en la entrada número (134) de SUMAC TPI, pág. 7

> *demuestra la existencia de argumentos legales y fácticos legítimos, presentados de buena fe y apoyados en prueba jurada y documental.*
>
> *Sexto Error: Erró el TPI al acoger en su sentencia los argumentos del demandante y considerar como moción de enmienda a determinaciones de hecho un escrito que no fue presentado con ese propósito, sin aclarar el récord a los fines de que previamente el demandado había esclarecido que su moción había sido erróneamente titulada y que el objetivo de la misma era solicitar la reconsideración sin entrar en la corrección de las determinaciones de hecho.*

Sometido el recurso, el 8 de julio de 2025, este Tribunal emitió una Resolución en la cual ordenamos a los apelados a presentar sus respectivos alegatos en un término a vencer el 23 de julio de 2025. De conformidad con lo anterior, el Sr. Chaves Jiménez sometió un Alegato de la Parte Apelada. De igual manera, la Autoridad de los Puertos radicó su Oposición a Recurso de Apelación Civil.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.**

La sentencia sumaria es el mecanismo adecuado para resolver aquellos casos que no ameritan la celebración de un juicio por no existir duda sobre hechos esenciales. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015). Este recurso propicia la solución justa, rápida y económica de las controversias. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019). Es decir, permite la ágil disposición de los casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022).

Ahora bien, el mecanismo de sentencia sumaria no aplica a todos los escenarios. Su concesión corresponde cuando: (1) existen hechos materiales no controvertidos, (2) el promovido no puede prevalecer ante el derecho, y (3) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

A esos efectos, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, faculta la presentación de una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García, supra*, a la pág. 679.

Cónsono con lo anterior, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción y su oposición. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). En particular, el inciso (a) de la precitada disposición reglamentaria establece las siguientes formalidades que debe exhibir la solicitud de sentencia sumaria:

*(1) Una exposición breve de las alegaciones de las partes;*
*(2) los asuntos litigiosos o en controversia;*

(3) *la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*

(4) *una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*

(5) *las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*

(6) *el remedio que debe ser concedido.* 32 LPRA Ap. V, R. 36. 3(a).

Por su parte, quien presente el escrito de oposición a la sentencia sumaria también tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Oriental Bank v. Caballero García, supra,* a la pág. 680. Así que, no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. 32 LPRA Ap. V, R. 36.3(c). Por ello, no debe asumir una actitud pasiva ni descansar en las aseveraciones o las negaciones. *Íd.*; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018).

Al contrario, la parte opositora debe establecer aquellos hechos controvertidos de la siguiente manera:

> *En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020) *Roldán Flores v. M. Cuebas et al., supra,* a la pág. 667.

No obstante, es menester explicar que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia, no implica que la moción de sentencia sumaria procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 351 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021). Al constituir un

remedio discrecional extraordinario, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

De presentarse oportunamente ambos escritos, el foro primario puede adoptar el procedimiento dispuesto en la Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.6, si el caso lo amerita. Este precepto reglamentario habilita el siguiente trámite:

> *Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración concediéndole a la parte promovida un término razonable para que pueda obtener declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia, o dictar cualquier otra orden que sea justa.*

Cabe señalar que, esta regla permite que el promovido por una moción de sentencia sumaria, obtenga la oportunidad adecuada para apoyar los hechos esenciales que justifican su oposición. *García Rivera et al. v. Enríquez*, 153 DPR 323, 339 (2001). No obstante, el juzgador de los hechos debe tomar aquellas medidas necesarias para garantizar que no se recurra a la Regla 36.6, *supra*, como un ardid para demorar la solución final del asunto. *Íd.* pág. 340. Véase, también, *Pérez v. El Vocero de P.R.*, 149 DPR 427, 449 (1999).

Explicado lo anterior, ahora conviene discutir cuándo procede dictar sentencia sumaria. En esa dirección, el foro primario debe adoptar el siguiente análisis a la luz de la prueba ante su consideración:

> *[E]l tribunal podrá dictar sentencia sumaria si de "las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, proceda dictar sentencia sumaria a favor de la parte*

*promovente". BPPR v. Cable Media, supra; Lugo Montalvo v. Sol Meliá Vacation, supra,* a la pág. 225.

Así pues, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión,* 178 DPR 200, 210 (2010); *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007). Los documentos presentados deben analizarse de la forma más favorable para la parte promovida, concediéndole así el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

Como regla general, no es aconsejable dictar sentencia sumaria si surgen asuntos de credibilidad que ameritan celebrar un juicio. Aún así, el Tribunal de Puerto Rico ha validado la aplicación de este mecanismo si no hay controversias esenciales sobre hechos materiales:

> *[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994).* **Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales**. *Ramos Pérez v. Univisión, supra,* a la pág. 219. (Énfasis nuestro).

Efectuado ese análisis, el tribunal podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria". *Birriel Colón v. Econo y otro, supra,* a la pág. 91; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* a la pág. 337.

Si una parte resulta inconforme con el dictamen de sentencia sumaria tiene derecho a recurrir a la etapa apelativa. En estos casos, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024); *Birriel Colón v. Econo y otro, supra,* pág. 91. Es decir, ostentamos la facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al., supra,* a la pág. 679. No obstante, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015). Ello, pues, carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que esa tarea corresponde al foro primario. *Íd.,* a la pág. 115; *Vera v. Dr. Bravo,* 161 DPR 308, 335 (2004).

**B.**

Es norma reiterada, que el desahucio es el mecanismo que tiene una persona para hacer valer su derecho posesorio. A esos fines, el Art. 725 del Código Civil de Puerto Rico (2020), Ley Núm. 55-2020, 31 LPRA 7863, según enmendado, establece que "[l]a persona con derecho a poseer un bien tiene acción para promover el juicio de desahucio contra cualquier poseedor sin derecho a poseer". Mediante esta acción legal se procura la expulsión del arrendatario o precarista que se mantiene en la propiedad sin pagar canon o merced alguna. *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 779 (2023); *Cooperativa v. Colón Lebrón,* 203 DPR 812, 820 (2020).

En armonía con lo anterior, el Art. 620 del Código de Enjuiciamiento Civil, Ley Núm. 6 de 31 de marzo de 1933, 32

LPRA sec. 2821, según enmendada (Código de Enjuiciamiento), reconoce legitimación activa a las siguientes personas para instar la acción de desahucio:

> *Tienen acción para promover el juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.*

En esa línea, el Art. 621 de la precitada legislación delimita los sujetos jurídicos contra los que procede incoar esta reclamación:

> *Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna.* 32 LPRA Sec. 2822.

Es menester destacar que, al momento de radicar el pleito de desahucio, este puede solicitarse en un proceso ordinario o sumario. *Adm. Vivienda Pública v. Vega Martínez,* 200 DPR 235, 240 (2018). De ser un procedimiento sumario, se entiende que lo único que se busca recobrar es la posesión. *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 10 (2016). Lo anterior implica que, como norma general, los conflictos de título no pueden dilucidarse en esta reclamación. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 431 (2009); *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971).

No obstante, si la parte demandada presenta otras defensas afirmativas relacionadas con la acción de desahucio, puede solicitar que el procedimiento se convierta al trámite ordinario. *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 10 (2016). Sobre este particular, en ciertos casos se ha permitido que un demandado presente defensas íntimamente relacionadas con la causa del desahucio de forma tal que el procedimiento sea ordinario. *Crespo Quiñones v. Santiago Velázquez, supra,* a la pág. 431. Véanse, también, *Jiménez v. Reyes,* 146 DPR 657 (1998); *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226 (1992). De ser una

acción ordinaria, "la reclamación estará sujeta a las reglas de la litigación civil ordinaria, excluyendo la legislación especial que reglamenta el desahucio sumario y sus restringidos plazos y condiciones". *ATPR v. SLG Volmar-Mathieu, supra,* a la pág. 10.

Respecto la carga probatoria aplicable a estos casos, el Tribunal Supremo de Puerto Rico ha pautado la siguiente normativa:

> ***[E]l demandante en una acción de desahucio en precario debe, en primer instancia probar prima facie su caso, o sea, debe presentar prueba en torno a su título sobre la finca y que esa finca es la misma que está en posesión del demandado nen precario. Si no prueba esa circunstancia, no está justificada una sentencia a su favor****. Escudero v. Guzman,* 96 DPR 299, 302 (1968). (Énfasis nuestro).

No obstante, si la parte demandada "produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante surge un conflicto de título que hace improcedente la acción de desahucio". *C.R.U.V. v. Román,* 100 DPR 318, 322 (1971).

## C.

En nuestro estado de derecho civil, el Art. 1401 del Código Civil (2020), *supra,* 31 LPRA 10361, regula la figura del mandato de la siguiente manera:

> *Por el contrato de mandato, el mandatario se obliga a realizar uno o más actos jurídicos en interés del mandante.*

Este negocio jurídico se presume oneroso, según dispuesto en el Art. 1408 de la precitada legislación. 31 LPRA sec. 10365. Respecto a su extensión, el Art. 1403 del Código Civil dispone lo siguiente:

> *El mandato comprende no sólo los actos para los cuales ha sido conferido, sino también aquellos que son necesarios para su cumplimiento.*

*El mandato general sólo comprende los actos de la administración ordinaria, excepto cuando otros actos o facultades se indican expresamente.* 31 LPRA 10363.

En esa línea, el mandato puede constituirse de forma expresa o tácita de acuerdo con las siguientes circunstancias:

*El mandato puede ser conferido o aceptado de manera expresa o tácita. La persona que sabe que alguien está haciendo algo en interés de ella y, pudiendo evitarlo no lo hace, confiere tácitamente un mandato. La ejecución del mandato implica su aceptación, aunque esta no se haya expresado.* 31 LPRA sec. 10365.

Ahora bien, cuando el mandante no otorga poder de representación, el mandatario actúa en nombre propio, pero en interés del mandante, quien no queda obligado directamente frente al tercero, ni este respecto al mandate.  No obstante, ambos pueden subrogarse en las acciones que el mandatario tiene contra cada uno de ellos.  31 LPRA 10364.

Una vez pactado este negocio jurídico, el mandante y el mandatario quedan sujetos a una serie de obligaciones. En lo concerniente al mandante, el Art. 1410 del Código Civil, *supra*, fija las siguientes obligaciones:

*(a) suministrar al mandatario los medios necesarios para la ejecución del mandato;*

*(b) pagar al mandatario el precio convenido;*

*(c) pagar, a requerimiento del mandatario, los gastos en los que razonablemente haya incurrido para ejecutar el mandato;*

*(d) indemnizar al mandatario los daños y perjuicios sufridos que no sean imputables a este, causados por la ejecución del mandato;*

*(e) liberar al mandatario de las obligaciones válidamente asumidas con terceros;*

*(f) avisar inmediatamente al mandatario la revocación del mandato;*

*(g) reaccionar, dentro de un tiempo razonable, a los informes y avisos que durante la ejecución reciba del mandatario; y*

*(h) examinar y aceptar o protestar las cuentas finales rendidas por el mandatario dentro del término de*

*treinta (30) días de haber sido rendidas. Vencido este plazo la cuenta se considera aceptada.* 31 LPRA 10391.

Por su parte, el mandatario debe cumplir con las obligaciones esbozadas en el Art. 1411 del referido cuerpo legal:

*(a) ejecutar personalmente, salvo disposición distinta, los actos comprendidos en el mandato;*

*(b) sujetarse a las instrucciones del mandante;*

*(c) avisar inmediatamente al mandante de cualesquiera circunstancias posteriores al mandato que razonablemente aconsejen apartarse de las instrucciones recibidas;*

*(d) adoptar, de surgir las circunstancias descritas en el inciso anterior, las medidas indispensables y urgentes;*

*(e) informar al mandante sobre cualquier conflicto de intereses o circunstancia que pueda motivar la modificación o la revocación del mandato;*

*(f) avisar al mandante de cualquier valor recibido en función del mandato y ponerlo a su disposición;*

*(g) comunicar al mandante, sin demora, la ejecución del mandato;*

*(h) entregar al mandante las ganancias derivadas de la ejecución con los intereses moratorios de las sumas utilizadas en provecho propio;*
*(i) rendir cuentas de la ejecución en la oportunidad convenida, cuando lo exija el mandante o al extinguirse el mandato;*

*(j) presentar y entregar al mandante, según corresponda, los documentos relacionados con la ejecución;*

*(k) indemnizar al mandante por los daños y perjuicios que cause su renuncia inoportuna y sin justificación.* 31 LPRA 10392.

### D.

Nuestro ordenamiento jurídico contempla la imposición de honorarios por razón de temeridad o frivolidad en la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d):

*En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.*

El amplio concepto de temeridad conlleva aquellas actuaciones de un litigante que conduzcan a un pleito que pudo evitarse, que provoque la prolongación indebida del trámite judicial, o que obligue a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 148 (2022). Véase, también, *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010). Un litigante perdidoso actúa con temeridad cuando con terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011); *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 866 (2008).

No obstante, la imposición de honorarios por temeridad no opera de modo automática. Su concesión depende exclusivamente de la determinación que haga el juzgador en torno a si la parte perdidosa o su abogado actuó o no con temeridad. *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 115 (2023); *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 736 (1990). A tales efectos, le corresponde al tribunal evaluar las siguientes consideraciones: (1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados. *C.O.P.R. v. S.P.U.*, *supra*, a la pág. 342-343, (citando a R. Hernández Colón, <u>Derecho Procesal Civil</u>, San Juan, Ed. LexisNexis, 2010, Sec. 4402).

Así pues, una parte es temeraria cuando insiste en alegar algo sin alguna prueba fehaciente, niega los hechos que le constan o son de fácil corroboración y dilata los procedimientos judiciales para no responder por sus obligaciones. *Consejo Titulares v. MAPFRE*, 2024 TSPR 140, 215 DPR __ (2025); *SLG González-Figueroa v. SLG et al., supra*, a las págs. 149-150. A modo

ilustrativo, el foro supremo local ha delimitado las siguientes circunstancias como escenarios de temeridad o frivolidad:

> *(1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. C.O.P.R. v. S.P.U., supra,* a la pág. 342.

Sin embargo, la concesión de honorarios por temeridad no procede cuando un litigante perdidoso ejerce su derecho a defenderse. En esa línea, el Tribunal Supremo de Puerto Rico ha establecido aquellos escenarios que no ameritan la imposición de estos honorarios:

> *[E]n innumerables ocasiones hemos expresado que no procede la imposición del pago de honorarios de abogado cuando lo que se enuncia ante el tribunal son controversias complejas y novedosas que no han sido resueltas; cuando se actúa acorde con una apreciación errónea del derecho y no hay precedentes establecidos sobre el asunto, o cuando existe alguna discrepancia genuina en cuanto a quién favorece el derecho aplicable. VS PR, LLC v. Drift-Wind,* 207 DPR 253, 277 (2021); *Santiago v. Sup. Grande,* 166 DPR 796, 821 (2006).

Por último, el foro primario goza de la facultad para imponer los honorarios de abogado a la parte que haya procedido con temeridad o frivolidad a tenor con la Regla 44.1 de Procedimiento Civil, *supra. Andamios de P.R. v. Newport Bonding, supra,* a la pág. 546. Efectuado el análisis discutido, el tribunal impondrá el pago de una suma por este concepto cuando determine que cualquier parte o su abogado actuó temerariamente.

Esta determinación es un asunto que descansa en la discreción del tribunal. *Pérez Rodríguez v. López Rodríguez et al.,* 210 DPR 163 (2022); *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005). Por ser la determinación de temeridad de carácter discrecional,

solo intervendremos con ella cuando nos enfrentemos a un craso de abuso de discreción. *Andamios de P.R. v. Newport Bonding, supra,* a la pág. 546; *S.L.G. Flores-Jiménez v. Colberg, supra*, a la pág. 866. Al respecto, conviene precisar que, la jurisprudencia ha establecido aquellas instancias constitutivas de abuso de discreción:

> *Un tribunal puede incurrir en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Así pues, "el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023). La discreción debe nutrirse de un juicio apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. *Citibank et al. v. ACBI et al., supra,* a la pág. 735; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

**III.**

En el recurso de epígrafe, el Sr. Barret argumenta que incidió el foro primario al dictar sentencia sumaria, ordenar la remoción de su nave del hangar, e imponer $20,000.00 en concepto de honorarios por temeridad. Sobre este particular, sostiene que el Sr. Chaves Jiménez tenía la obligación de representarlo ante la Autoridad de los Puertos al momento de suscribir el contrato de arrendamiento en virtud de un mandato tácito. Sin embargo, plantea que el apelado, a título personal, asumió la obligación contractual, lo cual implicó una renuncia unilateral al mandato. En vista de ello, solicita incluir a la Autoridad de los Puertos como parte indispensable para dilucidar

este asunto probatorio. A su vez, asegura que existen hechos pertinentes en controversia, que impiden dictar sentencia sumaria.

En sus respectivos alegatos, el Sr. Chaves Jiménez y la Autoridad de los Puertos coinciden en que el Sr. Barret no presentó una oposición de conformidad con la Regla 36.3 de Procedimiento Civil, *supra*. Respecto a los méritos del caso, aseveran que este descansó en alegaciones infundadas, que no alcanzan a establecer la existencia de un mandato o una titularidad de arrendamiento que le beneficie. Por ende, aseguran que el tribunal no erró al desestimar por la vía sumaria la reconvención y la demanda contra tercero instada por el apelante, toda vez que no existen hechos materiales en controversia.

En la atención de este caso, discutiremos en conjunto los señalamientos de error (1) al (4), toda vez que versan sobre el mecanismo de sentencia sumaria adoptado en este pleito. Luego discutiremos por separados los señalamientos de error (5) y (6) referentes a la imposición de honorarios por temeridad y la solicitud de reconsideración presentada por el apelante. Con esto en mente, pasemos a resolver la controversia que nos ocupa.

En primer lugar, establecemos que nos encontramos en igual posición que el foro primario para examinar *de novo* el expediente, y revisar si la petición de sentencia sumaria, así como su oposición, presentan las exigencias contenidas en la Regla 36.3 de Procedimiento Civil, *supra*. Veamos.

Surge del expediente ante nos, que el Sr. Chaves Jiménez presentó una Moción de Sentencia Sumaria, acompañada de amplio material probatorio. Evaluada con detenimiento dicha solicitud, resolvemos que esta cumple cabalmente con las formalidades requeridas en la Regla 36.3 de Procedimiento Civil, *supra*. No obstante, notamos que la Moción en Oposición a la Sentencia Sumaria sometida por el Sr. Barret, a la cual adjuntó

una declaración jurada, quebranta de modo sustancial las formalidades contempladas en la precitada disposición procesal.

En su escrito, no establece una exposición breve de las alegaciones principales, ni indica cuáles hechos concibe controvertidos mediante una referencia a la prueba y a los párrafos enumerados por el promovente. Ante la inobservancia de estos requisitos fundamentales, estamos imposibilitados de considerar su oposición para atender los méritos del caso. En vista de ello, desarrollaremos el análisis jurídico limitado a los asuntos recogidos en la solicitud de sentencia sumaria.

Así precisado, ahora nos compete resolver si erró el foro primario al conceder la petición de sentencia sumaria, y consecuentemente, ordenar la remoción del avión del hangar. Respondemos en la negativa. Adelantamos que la totalidad de la prueba que acompañó a la referida moción, nos permite concluir que no existen controversias sustanciales de hechos que impidan dictar sentencia sumaria.

En el expediente ante nuestra consideración, consta el contrato de arrendamiento otorgado el 7 de junio de 2023 por la Autoridad de los Puertos a favor del Sr. Chaves Jiménez. El contenido de este arreglo contractual nos devela que el apelado compareció por derecho propio, es decir, no asumió el carácter representativo del Sr. Neville Barret. Así lo corrobora el apartado de comparecencia incluido en el aducido contrato:

> *DE LA OTRA PARTE: CARLOS CHAVES JIMÉNEZ, mayor de edad, soltero, vecino de San Juan Puerto Rico, denominado de aquí en adelante como el "Arrendatario".[6]*

A la luz de este enunciado, determinamos que el arrendamiento en cuestión se otorgó exclusivamente en beneficio del Sr. Chaves Jiménez. En efecto, concluimos que no existe

---

[6] Apéndice del Escrito de Apelación, Anejo A, en la entrada número (112) de SUMAC TPI, a la pág. 1.

controversia sustancial respecto a que el arrendamiento se concedió a favor del apelado en su carácter personal, y no representativo. Asimismo, enfatizamos que no surge del expediente ante nos, un documento que acredite la existencia de un mandato, que obligase a este a representar al Sr. Barret durante la celebración de este negocio jurídico.

Establecido lo anterior, procedemos a analizar el acuerdo contractual respecto a aquellas cláusulas que prohíben el subarrendamiento. En lo concerniente, el inciso (A) del Art. 4 del contrato de arrendamiento contiene la siguiente prohibición:

> *A. El Arrendatario tendrá derecho a utilizar las propiedades arrendadas durante el periodo contratado para los fines, única y exclusivamente: Hangar para uso privado. Se prohíbe subarrendar el uso del hangar para aviones que no sean propiedad del arrendamiento.*[7]

En armonía con esta cláusula, el inciso (B) del Art. 21 de dicho arreglo contractual dispone lo siguiente:

> *B. La propiedad o derecho de este Contrato no podrá ser transferida, cedida, subarrendada, en todo o en parte, y de ninguna forma por Arrendatario, sin la previa autorización por escrito de la Autoridad.*[8]

De manera similar, el inciso (F) del Art. 21 del contrato referido prohíbe que se ocupe el hangar sin el permiso de la Autoridad de los Puertos:

> *F. El Arrendatario no permitirá, ni autorizará que se ocupe u ofrezca los bienes o servicios objeto de la concesión sin que previamente se haya formalizado la cesión o un subarrendamiento por escrito y se cumplan con todos los requisitos antes indicado.*[9]

Tras una lectura detenida de las cláusulas precitadas, concluimos que no existe controversia sustancial en cuanto a que

---

[7] Apéndice del Escrito de Apelación, Anejo A, en la entrada número (112) de SUMAC TPI, a las págs. 2-3.

[8] Apéndice del Escrito de Apelación, Anejo B, en la entrada número (112) de SUMAC TPI, a la pág. 6.

[9] Apéndice del Escrito de Apelación, Anejo B, en la entrada número (112) de SUMAC TPI, pág. 7. Dicha cláusula hace referencia al Artículo 21(A) del contrato de arrendamiento, el cual establece que para ceder o transferir el derecho reconocido en este arreglo contractual debe solicitarse autorización escrita previa a la Autoridad de los Puertos.

el contrato discutido prohíbe el subarrendamiento del hangar, e impide el estacionamiento de naves sin autorización. Así discutido, procedemos a aplicar el derecho a los hechos.

En la atención de este recurso, conviene recordar que nuestro ordenamiento jurídico faculta a aquella persona con derecho sobre un bien inmueble a promover el desahucio. Véase Art. 620 del Código de Enjuiciamiento Civil, *supra*. En virtud de este precepto, razonamos que el Sr. Chaves Jiménez ostenta el derecho a solicitar el desahucio al amparo del contrato de arrendamiento concedido a su favor. Asimismo, precisamos, —contrario a lo argumentado por el apelante— que no es requisito la intervención de la Autoridad de los Puertos como parte indispensable para ventilar este reclamo. De hecho, aunque su comparecencia no es necesaria, destacamos que esta entidad ha participado en el pleito como tercero demandado.[10] A su vez, ha avalado que el Sr. Chaves Jiménez ejerza por la vía judicial su derecho de arrendatario. Por tal motivo, colegimos que no existe impedimento legal para que este solicite la remoción de la nave estacionada en el hangar, según permite el Art. 620 del Código de Enjuiciamiento Civil, *supra*.

Superado ese análisis, procedemos a evaluar la prueba que presentó el demandante para prevalecer en su contención. Del material probatorio sometido por este, entiéndase, el contrato de arrendamiento, se desprende *a prima facie* que, goza del título de arrendatario, el cual le permite poseer el hangar para guardar su avión. Sin embargo, el apelante, por su parte, no presentó prueba suficiente para demostrar que tiene derecho a ocupar ese espacio. Tampoco demostró que posee un título tan bueno o mejor que el de

---

[10] **Conviene recordar que, el 6 de marzo de 2024, la Autoridad de los Puertos radicó su Contestación a la Demanda contra Tercero, en la que destacó que el contrato de arrendamiento otorgado a favor del Sr. Chaves Jiménez prohíbe el subarrendamiento. En virtud de este argumento, solicitó que se desestimara la acción legal instada en su contra**.

la parte apelada, que haga improcedente la solicitud de desahucio. Véanse *Escudero v. Guzman, supra,* a la pág. 302; *C.R.U.V. v. Román, supra,* a la pág. 322.

En vista de ello, concluimos que el TPI actuó correctamente al dictar sentencia sumaria, y conceder el remedio de desahucio a favor del Sr. Chaves Jiménez. A su vez, resolvemos que no incidió al desestimar la reconvención y la demanda contra tercero instada por el apelante. Por tanto, disponemos que no se cometieron los errores (1), (2), (3) y (4) referentes a la procedencia de la sentencia sumaria.

Atendido lo anterior, debemos discutir con detenimiento el señalamiento de error (5) relacionado con el otorgamiento de $20,000.00 en concepto de honorarios por temeridad. A esos efectos, evaluamos con sumo cuidado la totalidad del tracto procesal de este caso. Al emprender nuestro análisis, notamos que el apelante, por conducto de su representación legal, levantó una serie de argumentos desprovistos de fundamentos y prueba fehaciente. Tal actuación implicó que la parte apelada tuviera que incurrir en gastos innecesarios para hacer valer sus derechos. Ese proceder, a su vez, conllevó la prolongación indebida de los trámites judiciales.

**Sin embargo, somos conscientes de que la cuantía impuesta por razón de temeridad es excesivamente irrazonable. Ante estas circunstancias, estamos llamados a intervenir en el ejercicio discrecional adoptado por el TPI. No existe un juicio fundamentado para sostener la cantidad de $20,000.00 en tal concepto. Recordemos, pues que, la discreción judicial debe nutrirse de un juicio apoyado en la razonabilidad y en un sentido llano de justicia. En vista de ello, nuestro juicio prudente nos orienta a reducir a $3,000.00 la cuantía concedida en concepto de honorarios por**

**temeridad. Véanse *Citibank et al. v. ACBI et al., supra,* a la pág. 735; *SLG Zapata-Rivera v. J.F. Montalvo, supra,* a la pág. 435.**

Por último, nos corresponde abordar brevemente el señalamiento de error (6), en el cual el Sr. Neville Barret argumenta que erró el TPI al atender su solicitud de reconsideración como una moción de determinaciones de hechos adicionales. No le asiste la razón. Una lectura íntegra del dictamen apelado nos permite concluir que su moción se atendió como reconsideración de conformidad con la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, modificamos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, a los fines de reducir a $3,000.00 la cuantía concedida en concepto de honorarios por temeridad. Así modificada, confirmamos la decisión apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones